01
02
03
04
05
06
07
08
09
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID V. GARRISON,                                  )
                                                    )
                    Plaintiff,                      )
                                                    )        Case No. C05-1489-JLR-JPD
          v.                                        )
                                                    )
                                                    )
JO ANNE B. BARNHART, Commissioner   )        REPORT AND RECOMMENDATION
of Social Security Administration,                  )
                                                    )
                    Defendant.                      )
_____ )

16              I.  INTRODUCTION AND SUMMARY CONCLUSION

17          Plaintiff David V. Garrison appeals the final decision of the Commissioner of the Social

18   Security Administration ("Commissioner") that denied his applications for Disability Insurance

19   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

20   Social Security Act after a hearing before an administrative law judge ("ALJ").  For the

21   reasons set forth below, the Court recommends reversing this case and remanding for further

22   administrative proceedings.

23              II.  FACTS AND PROCEDURAL HISTORY

24          Plaintiff is a forty-seven-year-old man with a high school education and lengthy work

25   history that includes customer-service representative, service-dispatch manager, service-order

26   writer, and casino manager.  AR 43, 68, 78-85, 271.  He has a long history of intermittent

REPORT AND RECOMMENDATION
PAGE -1

01 anxiety-related impairments that have caused him to miss work and that appear to have

02 worsened over time.  AR 62.  Plaintiff alleges that these impairments became so severe that he

03 was forced to stop working on March 31, 2003.  Since then, he has lived with two of his

04 children and subsisted primarily off of various forms of public assistance.  AR 236B-D, 250-

05 51, 255.

06       Plaintiff applied for DIB on March 31, 2003, and SSI on August 22, 2003.  AR 43-45,

07 236A-E.  He alleged disability beginning on June 1, 1987, as a result of anxiety disorder, panic

08 attacks, hypertension, and diabetes.  AR 62.  Subsequently, plaintiff amended his onset date to

09 March 31, 2003, the last day he worked.  AR 256-57.  Plaintiff's applications were denied

10 both initially and upon reconsideration.  AR 30-37.

11       On April 6, 2005, an administrative hearing was held before an ALJ.  AR 244-78.  On

12 April 22, 2005, the ALJ issued a decision finding plaintiff not disabled.  AR 19-20.  He found

13 that plaintiff's impairments prevented him from performing his past relevant work, but despite

14 plaintiff's limitations, determined that he could perform other jobs in the national economy.

15 AR 19-20.  Plaintiff appealed the decision, but the Appeals Council declined review.  AR 6-8.

16 Therefore, the ALJ's April 22, 2005, decision serves as the Commissioner's final decision for

17 purposes of this Court's review.  On September 2, 2005, plaintiff timely filed this action

18 challenging the Commissioner's final decision.  Dkt. No. 3.

19                            III.  JURISDICTION

20       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§

21 405(g) and 1383(c)(3) (2005).

22                        IV.  STANDARD OF REVIEW

23       The court may set aside the Commissioner's denial of social security benefits when the

24 ALL's findings are based on legal error or not supported by substantial evidence in the record

25 as a whole.  *See* 42 U.S.C. § 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993);

26 *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Substantial evidence is defined as

REPORT AND RECOMMENDATION
PAGE -2

01  more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

02  reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*,

03  881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility,

04  resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53

05  F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational

06  interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*,

07  278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted).

08  V.  EVALUATING DISABILITY

09  As the claimant, Mr. Garrison bears the burden of proving that he is disabled within the

10  meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)

11  (internal citations omitted).  Disability is defined as the "inability to engage in any substantial

12  gainful activity by reason of any medically-determinable physical or mental impairment, which

13  can be expected to result in death, or which has lasted or can be expected to last for a

14  continuous period of not less than twelve months[.]"  42 U.S.C. §§ 423(d)(1)(A),

15  1382c(a)(3)(A).  A claimant is disabled only if his impairments are of such severity that he is

16  not able to do his previous work, and cannot, considering his age, education, and work

17  experience, engage in any other substantial gainful activity existing in the national economy.

18  *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *See also Tackett v. Apfel*, 180 F.3d 1094,

19  1098-99 (9th Cir. 1999).

20  The Social Security regulations set out a five-step sequential- evaluation process for

21  determining whether a claimant is disabled within the meaning of the Social Security Act. *See*

22  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must establish that he is not

23  engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the

24  claimant establishes that he has not engaged in any substantial gainful activity, the

25  Commissioner proceeds to step two.  At step two, the claimant must establish that he has one

26  or more medically-severe impairments, or combination of impairments, that limit his physical

REPORT AND RECOMMENDATION
PAGE -3

01  or mental ability to do basic work activities.  If the claimant does not have such impairments,

02  he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

03  impairment, the Commissioner moves to step three to determine whether the impairment

04  meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§

05  404.1520(d), 416.920(d).  A claimant who meets or equals one of the listings for the required

06  twelve-month-duration requirement is disabled.  *Id.*

07          When the claimant's impairment neither meets nor equals one of the impairments listed

08  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

09  residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

10  Commissioner evaluates the physical and mental demands of the claimant's past relevant work

11  to determine whether the claimant can still perform that work.  20 C.F.R. §§ 404.1520(f),

12  416.920(f).  If the claimant is not able to perform his past relevant work, the burden shifts to

13  the Commissioner at step five to show that the claimant can perform some other work that

14  exists in significant numbers in the national economy, taking into consideration the claimant's

15  RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*,

16  180 F.3d at 1100.  If the Commissioner finds the claimant is unable to perform other work,

17  then the claimant is found disabled and benefits may be awarded.

VI.  DECISION BELOW

19          On April 22, 2005, the ALJ issued a decision finding:

20      1.      The claimant met the disability insured status requirements of the Act
                on March 31, 2003, the date the claimant stated he became unable to
21              work, and continues to meet them through the date of this decision.

22      2.      The claimant has not engaged in substantial gainful activity since March
                31, 2003.

24      3.      The medical evidence establishes that the claimant has hypertension,
                diabetes and Panic Disorder with Agoraphobia, but that he does not
                have an impairment of combination of impairments listed in, or
25              medically equal to one listed in Appendix 1, Subpart P, Regulations No.
                4.

REPORT AND RECOMMENDATION
PAGE -4

01

4.    Claimant's allegations are only partially credible for the reasons set forth in the body of this decision.

02

03

5.    The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for the following limitations:  moderate limits in completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace, interacting appropriately with the general public, and responding appropriately to changes in the work setting.  (20 CFR 404.1545 and 416.945).

04

05

06

6.    The claimant is unable to perform past relevant work as a customer service representative and dispatcher.

07

08

7.    The claimant's residual functional capacity for the full range of medium work is reduced by the limitations in number 5.

09

8.    The claimant is 46 years old, which is defined as a "younger individual" (20 CFR 404.1563 and 416.963).

10

11

9.    The claimant has a high school education.  (20 CFR 404.1564 and 416.964).

12

10.   The claimant has no transferable skills as the vocational expert testified.

13

14

11.   Based on an exertional capacity for medium work and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16 and Rule 203.29, Table No. 3, of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

15

16

17

12.   Although he is unable to perform a full range of medium work Rule 203.29 used as a framework for decision making directs a finding of "not disabled' since there are still a significant number of other jobs in the national economy that claimant can perform as set forth in the body of this decision.

18

19

20

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

21

AR 19-20.

22

## VII.  ISSUES ON APPEAL

23

Plaintiff raises several issues in support of his argument that this case should be

24

reversed and remanded for further administrative proceedings:

25

26

1.    Did the ALJ erroneously reject the medical opinion of treating physician Fink?;

REPORT AND RECOMMENDATION
PAGE -5

2.      Did the ALJ erroneously reject plaintiff's testimony?;

3.      Did the ALJ improperly ignore witness statements?;

4.      Did the ALJ err in his RFC by failing to determine whether plaintiff could work on a "Regular and Continuing Basis?"; and

5.      Did the ALJ err by propounding an inaccurate hypothetical?

## VIII.  DISCUSSION

A.      <u>The ALJ Did Not Erroneously Reject the Medical Opinions of Treating Psychiatrist Robert  Fink</u>.

Plaintiff argues that the ALJ erred by rejecting the medical opinions of treating psychiatrist Robert Fink, M.D., without providing legally sufficient reasons for doing so.  Op. Br. at 13.  He urges the Court to credit Dr. Fink's opinions concerning plaintiff's functional limitations as true.  *Id*. at 17.

Dr. Fink is a psychiatrist who treated plaintiff on five occasions from November 10, 2003, to January 18, 2005.  AR 202-03.  His records include a January 18, 2005, Medical Source Statement form that addressed the nature and severity of plaintiff's mental impairments.  AR 197-200.  Dr. Fink found that plaintiff had marked limitations in several functional areas, including the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain attendance and be punctual, the ability to work in proximity to others without distraction, and the ability to complete a normal work schedule without interruption from psychologically-based symptoms.  AR 197-98.  He also opined that plaintiff would have marked limitations in all but one subcategory of social interaction.  AR 198-99.  Dr. Fink concluded that these limitations had existed since 2002.  AR 199.

The ALJ stated that he "disagree[d] with Dr. Fink's more restrictive assessments[,]"and instead preferred the less restrictive limitations offered by other physicians. AR 17-18.  Because Dr. Fink's opinions relating to plaintiff's limitations were inconsistent

REPORT AND RECOMMENDATION
PAGE -6

01   with those in other medical opinions, the ALJ was obligated to provide specific and legitimate

02   reasons for rejecting them.[1]  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal

03   citations omitted).

04        The ALJ satisfied his burden.  First, he pointed out that plaintiff received treatment

05   from Dr. Fink on an infrequent basis — once every several months — and that his treatment

06   notes were limited.  AR 17-18.  Contrary to plaintiff's assertions, this was not an improper

07   justification.  The treatment records from Dr. Fink reflect only five visits between March 4,

08   2004, and January 18, 2005, and consist of approximately one-half of a handwritten page for

09   each entry.  AR 204-06.  These opinions offer almost no information relating to the extent of

10   plaintiff's limitations and, therefore, are of little value.[2]

11        Second, the ALJ noted that the marked limitations Dr. Fink assigned were inconsistent

12   with plaintiff's reports that his anxiety levels improved with medication (which he continued

13   during treatment with Dr. Fink) and his activities of daily living.  AR 18.  Notes from Dr.

14   Herron, plaintiff's treating physician, support the assertion that plaintiff was improving with

15   medication.  AR 159, 165.  Similarly, plaintiff's testimony that he went to the gym, performed

16   household chores, and could get around town also supports the ALJ's decision.  AR 252-55.

17   Plaintiff argues that his activities were very limited and designed to avoid people and stressful

18   _____

19   [1]Plaintiff does not specify whether Dr. Fink's opinion was contradicted or
     uncontradicted, but he does concede that it differs from other medical opinions as to the
20   severity of plaintiff's functional limitations.  The Court agrees.  Therefore, the specific and
     legitimate standard is appropriate.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)
21   (internal citations omitted).

22   [2]Plaintiff argues that the ALJ should have ordered further development of these
23   records.  Although the ALJ must seek additional evidence or clarification from a treating
     physician when it is vague or conflicting, that duty "is triggered only when the evidence from
24   the treating medical source is inadequate to make a determination as to the claimant's
     disability."  20 C.F.R. § 416.912(e); s*ee also* SSR 96-5p; *Thomas*, 278 F.3d at 958.  Here, Dr.
25   Fink's treatment notes were somewhat vague, but the Medical Source Statement he provided
     was thorough and clear as to his views on plaintiff's condition.  Thus, the ALJ was not
26   required to develop the record further.

REPORT AND RECOMMENDATION
PAGE -7

01 | situations. Op. Br. at 15. This assertion is not inconsistent with the record, but when two

02 | interpretations are reasonable, as is the case here, it is the ALJ's that must be upheld. *Thomas*,

03 | 278 F.3d at 954.

04 | Finally, and perhaps most persuasively, the ALJ stated that he assigned greater weight

05 | to the opinions of Dr. Herron and the State examining physicians, Drs. Reade and Nelson,

06 | because they were more descriptive and "more consistent with claimant's history and

07 | treatment of anxiety" than Dr. Fink's opinion. AR 18. The ALJ's thorough evaluation of the

08 | medical evidence belies plaintiff's assertion that this statement is conclusory. The ALJ

09 | interpreted more than twenty-five pages of Dr. Herron's treatment notes to paint a picture of a

10 | man with a manageable impairment. Indeed, Dr. Herron's notes repeatedly refer to plaintiff's

11 | continual improvement and attempts to work, but acknowledge continued symptoms. *See* AR

12 | 150, 162, 164-65, 172, 175. This is consistent with the long-term history of plaintiff's illness

13 | as well. AR 62. Moreover, the State physicians reviewed these notes and concluded that

14 | plaintiff had only mild-to-moderate limitations. AR 176-93. They opined that he could

15 | perform certain tasks with limited exposure to the public and only a few coworkers. AR 192-

16 | 93. While the Court is sympathetic to alternative interpretations of the evidence, the ALJ's

17 | evaluation of the evidence was reasonable and, therefore, must be upheld. *Thomas*, 278 F.3d

18 | at 954.

19 | Plaintiff asserts that the ALJ should have given Dr. Fink's opinions more weight

20 | because he is a psychiatrist, whereas Dr. Herron is a general practitioner. Op. Br. at 15.

21 | Generally, the ALJ will prefer the opinions of treating physicians, particularly when those

22 | opinions relate to medical areas within their area of specialization. 20 C.F.R. §§

23 | 404.1527(d)(5); 416.927(d)(5); *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).

24 | However, treating physician opinions "may be entitled to little if any weight" when they are

25 | inadequately supported by treatment notes, or when the physician has not seen the patient

26 | frequently enough to support a reliable "longitudinal picture" of the plaintiff's impairments.

REPORT AND RECOMMENDATION
PAGE -8

01  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.2 (9th Cir. 2001) (internal citations omitted).

02  In this case, the ALJ properly explained that Dr. Fink's opinions were entitled to less weight

03  because they were poorly supported and because they were based on infrequent visits.  These

04  reasons appropriately reinforce the decision of the ALJ to prefer the more thoroughly

05  supported opinions of other treating and examining physicians.

06              B.        The ALJ Erroneously Rejected Plaintiff's Testimony.

07          Plaintiff argues that the ALJ erred failing to give clear and convincing reasons for

08  rejecting his testimony.[3]  Op. Br. at 18.  Once a claimant produces medical evidence of an

09  underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of

10  symptoms solely because they are unsupported by objective medical evidence.  *Reddick,* 157

11  F.3d at 722 (internal citations omitted).  Absent affirmative evidence showing that the claimant

12  is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's

13  testimony.  *Id.*  "General findings are insufficient; rather, the ALJ must identify what testimony

14  is not credible and what evidence undermines the claimant's complaints."[4]  *Id.*

15          In this case, the ALJ concluded that plaintiff's testimony referring to the symptoms of

16  his anxiety and panic disorders was "only partially credible."  AR 17.  His analysis then quickly

17  moved into an evaluation of the medical evidence.  In doing so, the ALJ did not link up the

18  facts he found to discredit portions of plaintiff's testimony.  Rather, the ALJ only generalized

19  that the medical record as a whole was inconsistent with plaintiff's entire testimony.  This fails

20  to satisfy the *Reddick* standard for evaluating plaintiff's testimony.   On remand, the ALJ is

---

22      [3]Here, there is no dispute that plaintiff suffered from anxiety and panic disorders, and there
is no suggestion of malingering.  Accordingly, the ALJ was obligated to provide clear and
23  convincing reasons for rejecting plaintiff's testimony.  The Commissioner does not dispute this.

24      [4]The ALJ may consider ordinary techniques of credibility evaluation, including a
reputation for truthfulness, inconsistencies in testimony, or between testimony and conduct, daily
25  activities, work record, and testimony from physicians and third parties concerning the nature,
severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119
26  F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

REPORT AND RECOMMENDATION
PAGE -9

01 directed to consider all of plaintiff's testimony, and if some or all of it is to be rejected, the

02 ALJ is directed to provide clear and convincing reasons for doing so.

03            C.       The ALJ Erroneously Ignored Witness Statements.

04            Plaintiff's wife and daughters each submitted written statements to Disability

05 Determination Services ("DDS") regarding the nature and extent of plaintiff's impairments.

06 AR 86-95, 103-07.  The parties agree that the ALJ made no mention of these statements.

07 Plaintiff argues that this was error and that the statements should be credited as true.  Op. Br.

08 at 20-21.

09            Lay-witness testimony as to a plaintiff's symptoms or how an impairment affects one's

10 ability to work is competent evidence that cannot be disregarded without comment.  20 C.F.R.

11 §§ 404.1513(d)(4), 416.913(d)(4); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  To

12 discount lay-witness testimony, the ALJ must "provide reasons germane to each witness."  *Id.*

13 Therefore, the ALJ erred by failing to provide any reasons or analysis for these statements.

14            The Commissioner concedes that the ALJ's decision did not address these statements,

15 but argues that even if credited as true, they do not contradict the ALJ's findings.  Def. Br. at

16 6.  Her argument is that the omitted statements would add little, if any, to plaintiff's RFC.

17 However, the conclusion urged by the Commissioner is not self-evident.  For instance,

18 plaintiff's daughter indicated that plaintiff "can't focus on things periodically," that he had

19 "sleepiness, dizziness, [and] confusion," and that he seemed "anxious or sleepy pretty much all

20 of the time."  AR 86-90.  Similarly, his wife testified that plaintiff had "trouble dealing with

21 stress, dizziness, inability to make decisions, [and] depression[.]"  AR 91.  She also stated that

22 he "can't seem to focus," often seems "anxious [or] worried," and "doesn't go out much."

23 AR 91-92.  The ALJ concluded that plaintiff had an RFC that included "moderate limits in

24 completing a normal workday and workweek without interruptions from psychologically based

25 symptoms and performing at a consistent pace, interacting appropriately with the general

26 public, and responding appropriately to changes in the work setting."  AR 19.  Nothing in the

REPORT AND RECOMMENDATION
PAGE -10

01  record indicates that the RFC analysis takes into account the complete limitations suggested by

02  the witnesses.  Because this matter is to be remanded for further review of the adverse

03  credibility determination, the ALJ is also directed to evaluate the witness statements as well.

04

05         D.     The ALJ Should Explicitly Assess Plaintiff's Ability to Work on a "Regular and
               Continuing Basis."

06         RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained

07  performance of the physical-mental requirements of jobs."  20 C.F.R. 404, Subpt. P, App. 2

08  § 200(c).  It is an administrative decision as to the most a plaintiff can do, despite his

09  limitations. SSR 96-8p.  The ALJ must assess all of the relevant evidence, including evidence

10  regarding symptoms that are not severe, to determine if the claimant retains the ability to work

11  on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week.  *Reddick*, 157

12  F.3d at 724; *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96-8p.  Plaintiff argues

13  that the ALJ's RFC determination was deficient because it failed to assess his ability to work

14  on a regular and continuing basis.  Op. Br. at 22.  He also argues that the RFC did not

15  consider all of the evidence of the record.  *Id*. at 23.

16         In this case, the ALJ found that plaintiff retained

17
18                 the residual functional capacity to perform the physical exertion
                  and nonexertional requirements of work except for the
                  following limitations: moderate limits in completing a normal
19                workday and workweek without interruptions from
                  psychologically based symptoms and performing at a consistent
20                pace, interacting appropriately with the general public, and
                  responding appropriately to changes in the work setting
21
22  AR 19.  Although the RFC made no explicit reference to plaintiff's ability to work on a

23  "regular and continuing basis," that finding could be implied from his RFC determination.

24         Because the ALJ erred in other portions of his decision, he should make a more

25  explicit finding relevant to plaintiff's ability to perform work on a regular and continuing basis,

26  taking into account the testimony of plaintiff and lay-witnesses.  This finding is particularly

01 important in this case because of the waxing-waning nature of plaintiff's impairment. *Lester v.*

02 *Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (noting that occasional symptom-free periods, or

03 attempts at work, do not preclude a finding of disability).  In other words, a clear finding on

04 this issue is important because plaintiff's ability to consistently control his anxiety so that he

05 can cope with work-related stressors, focus on tasks, and maintain attendance, is a key

06 question at issue.

07         E.      The ALJ's Hypothetical Question.

08         Finally, plaintiff argues that the ALJ's hypothetical was deficient.  Op. Br. at 24.  In

09 light of the foregoing errors, it is not necessary to explore this assertion of error in detail.  The

10 fact that the ALJ erred in the evaluation of plaintiff's testimony and the witnesses' testimony

11 suggests the hypothetical may not have taken into account all of the limitations faced by the

12 plaintiff.  To the extent that the plaintiff's limitations are modified upon remand, the ALJ

13 should propound a new hypothetical that incorporates the erroneously rejected testimony.

14                             IX.  CONCLUSION

15         For the reasons discussed above, this case should be reversed and remanded for

16 further administrative proceedings not inconsistent with this report and recommendation.  In

17 particular, the ALJ should reassess the testimony of plaintiff and several of the lay witnesses.

18 Additionally, the ALJ should clarify plaintiff's ability to work on a regular and continuing

19 basis.  Finally, the ALJ should propound a hypothetical that takes into account all of plaintiff's

20 limitations found after considering this additional evidence.  A proposed order accompanies

21 this report and recommendation.

22         DATED this 15th day of June, 2006.

23

24                                         JAMES P. DONOHUE
                                        United States Magistrate Judge

25

26

REPORT AND RECOMMENDATION
PAGE -12